GARRETT L. HANKEN (SBN 57213)
GHanken@ggfirm.com
IRA M. STEINBERG (SBN 273997)
ISteinberg@ggfirm.com
GREENBERG GLUSKER FIELDS CLAMAN &
MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067
Telephone:  310.553.3610
Fax:  310.553.0687

Attorneys for Plaintiffs
SAND CANYON MANAGEMENT, L.P.,
d.b.a. SAND CANYON COUNTRY CLUB;
and STEVE Y. KIM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAND CANYON MANAGEMENT, L.P., d.b.a., SAND CANYON COUNTRY CLUB, a California limited partnership, and Steve Y. Kim, an individual,<br><br>               Plaintiffs,<br><br>v.<br><br>CITY OF SANTA CLARITA, and DOES 1 – 50, inclusive,<br><br>               Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **INVERSE CONDEMNATION (U.S. CONSTITUTION AMEND. V & 42 U.S.C. § 1983)**<br>2. **INVERSE CONDEMNATION (CALIFORNIA CONSTITUTION ART. 1, § 19 & 42 U.S.C. § 1983)**<br>3. **VIOLATION OF 42 U.S.C. § 1983 (DEPRIVATION OF EQUAL PROTECTION)**<br>4. **VIOLATION OF 42 U.S.C. § 1983 (DEPRIVATION OF SUBSTANTIVE DUE PROCESS)**<br><br>**[JURY TRIAL DEMANDED]** |

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

**INTRODUCTION**

This is a regulatory takings case, in which the City of Santa Clarita (the "City") has purported to impose on Plaintiffs Sand Canyon Management, L.P., d.b.a., Sand Canyon Country Club ("SCCC"), and Steve Y. Kim ("Kim" and with SCCC, collectively "Plaintiffs") a requirement to maintain a money-losing use of land so that the public can enjoy the benefits of open space. Kim, through SCCC, purchased a golf course, commonly known as Sand Canyon Country Club, while it was in economic distress, based on the reasonable expectation and assurance that he and SCCC would be able to restore it and make the golf course into an economically viable enterprise.

A critical element of Plaintiffs' plan to do so was to attract a steady stream of visitors that would ensure the long-term viability and profitability of the golf course. To provide that otherwise missing steady stream of visitors, Plaintiffs proposed to build a resort on a small portion of the golf course property that was no longer being used as a golf course. SCCC proposed to replace all open space used to construct the resort, at a two-to-one ratio, with new open space dedicated to the City, to ensure the community would not suffer any net loss of open space as a result of the construction of the resort. The City, however, voted to maintain zoning regulations precluding the construction of the proposed resort on the grounds that the City was bound by a prior City Council resolution to require the owner of the property to maintain the entire golf course property, including portions no longer in use as a golf course, as open space in perpetuity. The City's imposition on Plaintiffs of this requirement to maintain an economically non-viable use of its property solely for the benefit of the public, and its refusal to accept or even give reasonable consideration to the mitigating measures proposed by Plaintiffs, constitutes a regulatory taking for which just compensation is required under the United States Constitution.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

**PARTIES**

1.      Sand Canyon Management, L.P., d.b.a. Sand Canyon Country Club, is a California limited partnership with its principal place of business in Los Angeles County, California.

2.      Kim is an individual residing in Los Angeles County, California.  Kim is, and was at all relevant times herein, the managing agent and majority equity stakeholder of Sand Canyon Management, L.P.

3.      The City is a duly organized California general law city located in Los Angeles County.

**JURISDICTION**

4.       The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

**GENERAL ALLEGATIONS**

The 1996 Resolution Approving the Golf Course

5.      In 1996, the City approved the construction of the "Hunters Green Residential Development and Golf Course" (the "Hunters Green Project" and "1996 Resolution").  The golf course on the property that was part of the Hunters Green Project (the "Golf Course") was formerly named Robinson Ranch Golf Club and was renamed Sand Canyon Country Club in 2017.

6.      The Golf Course originally included 36 holes.  The facilities included in the Golf Course covered approximately 300 acres of land (the "Property").

7.      In approving the Hunters Green Project, the City Council determined that the unavoidable environmental impacts of the project were acceptable when balanced with the benefits to the public from the project.

8.      Condition 83 of the 1996 Resolution stated that the aforementioned public benefits included that "[t]he project would preserve approximately 300 acres of land into perpetuity as recreational/open space" ("Condition 83").

9.      Condition 83 did not specify that any particular land was required to

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

be among the approximately 300 acres that would be preserved as open space for the community, nor the precise acreage that must be maintained as open space, nor even what uses were acceptable as "recreational/open space."

10. The only recorded restriction implementing Condition 83 is a note on the final tract map on Tract No. 52004, recorded in December 1999. That note only restricts the construction of *residences* on the Property, stating "AND WE ALSO HEREBY DEDICATE TO THE CITY OF SANTA CLARITA THE RIGHT TO RESTRICT RESIDENTIAL CONSTRUCTION OVER ALL OPEN SPACE LOTS 74, 75, 76, 77, 78, 79, 80 AND 81."

The Resort Proposal

11. In 2016 Plaintiffs acquired their ownership interests in the Property.

12. The demand for golf courses in the U.S. has been declining since the 2008 recession, with dozens closing across the country in recent years.

13. The Golf Course was losing money when SCCC acquired it.

14. To rescue the Golf Course, SCCC reduced the Golf Course from 36 holes to 27 holes and invested approximately $7 million to thoroughly renovate and improve it.

15. Despite the improvements to the Golf Course, it still was not economically stable and viable in the long-term because the Property lacked amenities to draw to the Golf Course sufficient visitors from Los Angeles and beyond.

16. In July 2016, the "Sand Fire" and subsequent flooding and mudslides caused substantial damage to the Golf Course, and in particular to the portion of the Golf Course where the nine unused holes were located.

17. To ensure that the Golf Course could remain viable, and to make productive use of the portion of the Property on which the nine unused holes had been located, Plaintiffs proposed to construct a resort on the unused and most damaged portion of the Golf Course.

18.     The resort would be a natural complement to the Golf Course and draw visitors to ensure that the Golf Course became economically viable and a beneficial part of the community.

19.     On February 2, 2018, SCCC applied to the City Planning Division for authorization to construct the proposed resort (the "Resort" and "Resort Plan") in a portion of the area in which the nine unused holes of the Golf Course had been located (the "Resort Area").

20.     Plaintiffs envisioned the Resort as a world-class resort and spa that would attract visitors from around the world.  In addition to the Golf Course, the Resort Plan included the following:

       a.     Main hotel complex;

       b.     Spa;

       c.     Wedding venue;

       d.     Villas for rent by guests;

       e.     Function/events building;

       f.     Outdoor recreation space, including tennis courts; and

       g.     Scenic pedestrian trails.

## The Submission of the Master Case, EIR, and Market Demand Study

21.     Construction of the Resort required a series of approvals packaged as Master Case 18-021 (the "Master Case"), filed in February 2018, which included the following:

       a.     Conditional use permit;

       b.     Development review;

       c.     Hillside development review;

       d.     General plan amendment;

       e.     Landscape plan review;

       f.     Minor use permit;

       g.     Oak tree permit;

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

h.    Tentative tract map approval;

i.    Zoning change; and

j.    Environmental impact report.

22.    From the beginning, the City led Plaintiffs to believe that Plaintiffs would be able to enhance the Golf Course and make a productive and viable use of the Property.

23.    Plaintiffs would not have purchased the Property or invested millions improving the Golf Course but for Plaintiffs' reasonable reliance on the City's representations, and their distinct investment backed expectations that, with such investment made on Plaintiffs' part, the City would permit SCCC to make the Property and the Golf Course reasonably profitable and would not saddle the Property with a money-losing use of the Golf Course.

24.    Had Plaintiffs known that the City would obligate SCCC to maintain an economically unviable business venture for the purpose of providing open space to the community at large, Plaintiffs would not have purchased the Property, much less spent millions of dollars to salvage and improve the Golf Course and the Property.

25.    Kim had multiple discussions with elected and administrative representatives of the City in which those representatives repeatedly communicated to Kim that, subject to modifications that addressed the City's concerns which arose in the planning process, the Resort would be an appropriate use of the Resort Area and an appropriate complement to the Golf Course.

26.    Kim met with then mayor Laurene Weste in 2018, who indicated her support for the Resort Plan and the rezoning of Open Space to accommodate the Resort.

27.    Several weeks before the City Council hearing to consider the Master Case Kim met with City Manager Ken Striplin, who told Kim that in order to ensure approval of the Resort Plan SCCC should replace the open space that was to

be replaced by the Resort on a two-to-one basis, contribute $1.5 million for improving local horse trails, and construct a trail connecting Robinson Ranch road to the Canyon Oak Spring road.  Plaintiffs agreed to all of these things.

28.     In reliance on these representations to their detriment, Plaintiffs expended additional design fees to address each of the concerns mentioned by the City, modifying the design of the Resort each time such concerns were mentioned.

29.     The City determined that an environmental impact report ("EIR") pursuant to the California Environmental Quality Act was necessary for the Resort Plan.  Dudek was commissioned to prepare the EIR.

30.     In preparing the EIR, Dudek analyzed three project alternatives. Plaintiffs modified their initial proposal for the Resort and adopted "Alternative 2" in the EIR, which reduced the scope of the Resort Plan and rendered it environmentally superior while preserving consistency with the larger goals of the Resort Plan.

31.     Dudek's draft EIR found that the Resort Plan presented "less than significant" impacts in nearly every material category of analysis, including:

   a.     Aesthetics;

   b.     Energy;

   c.     Greenhouse gas emissions;

   d.     Hazards and hazardous materials;

   e.     Hydrology and water quality;

   f.     Population and housing;

   g.     Public services;

   h.     Recreation;

   i.     Utilities and service systems;

   j.     Construction and operational impacts;

   k.     Water supply impact;

   l.     Wastewater impact; and

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

m.      Stormwater impact.

32.    The draft EIR also found the impact on the following factors would be less than significant with appropriate mitigation measures:

a.      Health risk assessment;

b.      Plant and wildlife impact;

c.      Wetlands impact;

d.      Oak tree impact;

e.      Cultural and tribal cultural resources;

f.      Geology and soils;

g.      Land use and planning; and

h.      Wildfire risk.

33.    The City also determined that SCCC should prepare a market demand study to investigate the economic viability of the Resort Plan.  C.B. Richard Ellis ("CBRE") was commissioned to prepare the market demand study.

34.    The CBRE market demand study concluded there was sufficient demand to sustain the Resort.

35.    The Santa Clarita Economic Development Corporation performed its own study and concluded that the Resort Plan would create hundreds of new jobs and bring millions of dollars of economic activity and tax revenue to the City.

The Planning Commission Hearings

36.    On May 21, 2019, the Planning Commission conducted its initial tour of the Resort Area in conjunction with SCCC as part of the preparation of the Master Case.

37.    At no time prior to the filing of the Master Case, or during the initial site inspection did anyone from the City inform Plaintiffs that Plaintiffs could not construct the Resort because of any condition in the 1996 Resolution, including Condition 83.

38.    On November 17, 2020, the City of Santa Clarita Planning

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

Commission held its first public meeting on the Resort Plan.

39. At that Planning Commission meeting members of the public raised Condition 83 and asserted that it should be construed to prohibit the Resort Plan, or any further development of the Property.

40. A vocal opponent of the Resort Plan on the Planning Commission, Commissioner Lisa Eichman ("Commissioner Eichman"), stated on the record that she was not aware of Condition 83, and its statement that "approximately 300 acres" of land should be preserved as open space.

41. Commissioner Eichman questioned why SCCC was even allowed to submit the Master Case in the first place given Condition 83. In response, City staff and the City Attorney informed the Planning Commission that SCCC has the right to request a zoning change for the Resort Area, and that the City Council has the authority to enact the zoning change.

42. Additional public hearings were held on January 19, 2021, March 2, 2021, May 18, 2021, and June 1, 2021.

43. At these hearings members of the Planning Commission raised concerns regarding the Resort Plan, including the Resort's design, fire safety, and transportation issues.

44. In response, Plaintiffs diligently modified the Resort Plan to address each of such Planning Commission's concerns. For example:

a. The Planning Commission and members of the public raised concerns regarding how the Resort would evacuate in the event of a wildfire. SCCC agreed to establish a secondary access route for emergency vehicles, and to evacuate guests long before residents were required to evacuate.

b. SCCC proposed to allay concerns regarding traffic by timing employee shift changes and check-in times to avoid increasing traffic at the times residents are heavily using the local roads.

c. SCCC proposed to reduce construction noise and pollution by

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

utilizing cutting edge steel framing technology which would enable significant amounts of fabrication and assembly of improvements to be performed off-site.

45.     Meanwhile, the most prominent issue raised at the Planning Commission hearings pertained to the "open space" language in the original 1996 Resolution, i.e. Condition 83.

46.     The Golf Course is presently zoned as "Open Space."  To permit construction of the Resort, a portion of the Resort Area would need to be rezoned from "Open Space" to "Community Commercial."

47.     Members of the Planning Commission and the public asserted, incorrectly, that the language of Condition 83 precluded any further development of any portion of the Golf Course, in any manner, whatsoever.

48.     At the January and March 2021 Planning Commission meetings, a commissioner stated on the record that to consider the rezoning of portions of the Resort Area from Open Space to Community Commercial, there would need to be compensating tangible public benefits and a replacement of open space with new open space on at least a one-to-one ratio.

49.     By the time of the June 2021 Planning Commission meeting SCCC increased its proposal to replace Open Space rezoned as Community Commercial on a two-to-one basis, and to dedicate the newly acquired Open Space to the City, thus providing the City with more security regarding the status of Open Space land than it presently has with the Golf Course.

50.     At the May 2021 Planning Commission meeting, Kim, on behalf of SCCC, stated that the revised Resort Plan would expand existing trails for the benefit of the public and assure a secondary access route for fire evacuation.

51.     Plaintiffs incurred roughly $3 million in expenses developing and modifying the Resort Plan in response to such input from City staff and the Planning Commission on the reasonable expectation that, if Plaintiffs diligently addressed each of the Planning Commission's concerns, the Planning Commission

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

and the City would review such modified Resort Plan fairly and would ultimately approve the Resort Plan.

52.     At the June 1, 2021, hearing however, it became clear that, no matter what modifications SCCC made or would make to the Resort Plan, and no matter what offsetting measures SCCC proposed or would propose, the Planning Commission intended to deny the Master Case on the purported basis of the open space language in the 1996 Resolution.

53.     The Planning Commission denied the Master Case at its June 1, 2021, meeting.

The City Council Meeting

54.     SCCC appealed the denial of the Master Case to the City Council.

55.     On July 13, 2021 the City Council met to consider the appeal of the Master Case.

56.     At the City Council meeting, the Resort Plan traffic engineer, fire safety expert, project architect, and even the head chef for the proposed Resort restaurants appeared to discuss the Resort Plan and the modifications SCCC made to address the concerns raised by the Planning Commission.

57.     Though many commenters at the City Council hearing supported the Resort Plan, an undercurrent of anti-Asian bias could be detected. Kim is an immigrant originally from South Korea. He came to the U.S. in the 1970s, but still supports charitable institutions in South Korea. In the City Council meeting and in the Planning Commission hearings, public commenters referred to Mr. Kim's work with Korean charities and purported plans to bus in workers from "Koreatown" and "Chinatown" as reasons to deny the Master Case.

58.     At the end, even though SCCC proposed to replace land re-zoned as Community Commercial on a two-to-one basis with open space for the benefit of the entire community and to contribute $1.5 million, up-front, to improve trails for public use, the City Council affirmed the Planning Commission's denial of the

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1    Master Case with prejudice.

2         59.    The formal resolution denying the Master Case, Resolution P21-10,

3    included a finding that the Resort Plan was not consistent with the City General

4    Plan because it would require the rezoning of land zoned as Open Space.

5         60.    The basis for this finding was that Condition 83 states that

6    "approximately 300 acres" of land should be maintained as open space in

7    perpetuity.  The City Council found that the Resort Plan was inconsistent with the

8    1996 Resolution and thus incompatible with the City General Plan.

9         61.    The 1996 Resolution is cited repeatedly in Resolution P21-10 as the

10   primary reason for denying the Master Case.

## FIRST CAUSE OF ACTION

## (Inverse Condemnation – U.S. Const. Amend. V & 42 U.S.C. § 1983)

13        62.    Plaintiffs refer to the preceding paragraphs and incorporate them here

14   by reference.

15        63.    The highest and best use of the Property is to maintain a golf course

16   and resort.  If the Golf Course is to be maintained, the Resort is a natural

17   complement that ensures sufficient visitors and revenue to ensure the Golf Course

18   is viable and profitable in the long-run.

19        64.    Resolution P21-10 obligates SCCC to maintain an unprofitable use of

20   the Golf Course, including the Resort Area, and prohibits SCCC from utilizing the

21   land in an economically viable manner.

22        65.    The economic impact of this regulation is severe, and the rationale of

23   Resolution P21-10 would preclude SCCC from making *any* economically viable

24   use of the land as the Golf Course is not sustainable in the long-term as a business

25   venture.

26        66.    SCCC had distinct investment backed expectations with respect to the

27   use of the Golf Course.  Since acquiring the Property and the Golf Course in 2016,

28   Plaintiffs have been (mis)led to believe that SCCC would be able to make

productive use of the Golf Course and to take meaningful actions necessary to ensure the long-term viability of the Golf Course and of the Property. Plaintiffs spent millions of dollars in reasonable reliance on information and assurances repeatedly provided by the City.

67. The City and its staff consistently encouraged SCCC to make the investments necessary to present a Master Case that addresses the economic viability of the Project, the design of the resort, fire safety, public trails, and the replacement of open space converted to commercial use, but the City ultimately ignored the fact that the Resort Plan increased the amount of open space for the community and denied the Master Case on the basis that the 1996 Resolution barred the Master Case.

68. Resolution P21-10, by applying the 1996 Resolution to the Resort Area, imposes exclusively on SCCC a burden of maintaining open space for the entire community. While the entire community will enjoy the benefits of 300 acres of open space, the City Council, in adopting Resolution P21-10, determined that SCCC and the Property must bear the entire burden of providing that open space and that SCCC cannot mitigate that burden by providing even more alternative open space to the City.

69. The City's actions constitute a regulatory taking under the U.S. Constitution, for which just compensation to SCCC in the amount of $250 million is required. The City has not paid any compensation for this regulatory taking.

## SECOND CAUSE OF ACTION

### (Inverse Condemnation – California Const. Art. I, § 19 and 42 U.S.C. § 1983)

70. Plaintiffs refer to the preceding paragraphs and incorporate them here by reference.

71. The regulatory taking referenced in the first cause of action constitutes a regulatory taking under the California constitution as well and entitles SCCC to just compensation in the same amount.

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

# THIRD CAUSE OF ACTION

## (42 U.S.C. § 1983 & U.S. Const. Amend. XIV – Equal Protection Violation)

72.     Plaintiffs refer to the preceding paragraphs and incorporate them here by reference.

73.     Kim is Korean-American and an immigrant.

74.     Distinctions based on ethnicity are inherently suspect and subject to strict scrutiny.

75.     Derogatory comments regarding Mr. Kim's involvement in Korean charities (as if such work was wrongful) and the purported plan to use Korean workers (as if it is wrongful to work with those of the Korean ethnicity) indicate that anti-Asian bias significantly influenced the adoption of Resolution P21-10.

76.     Public comments opposing the Resort Plan made reference to the bussing in workers from "Koreatown" and "Chinatown," for example, as part of arguments to the City Council to deny the Master Case.

77.     On information and belief, the City's rejection of the Resort Plan purportedly on the basis of the open space issue, despite the Resort Plan's *increase* in the total open space, results from hostility by entrenched homeowners and public officials to Mr. Kim based on his ethnicity.

78.     Moreover, as set forth below in the fourth cause of action, the City's justification for distinguishing the Resort Area and the Resort from other parcels which are zoned as Community Commercial is arbitrary and irrational.  The Resort Plan increases open space for residents, and thus rejecting it on the basis of the 1996 Resolution draws an entirely arbitrary and irrational distinction between the Resort Area and other commercial parcels and projects in the City.

79.     The violation of Plaintiffs' civil rights under the equal protection clause have damaged Plaintiffs in the amount of $250 million.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

# **FOURTH CAUSE OF ACTION**

## **(42 U.S.C. § 1983 & U.S. Const. Amend. V – Substantive Due Process Violation)**

80.    Plaintiffs refer to the preceding paragraphs and incorporate them here by reference.

81.    The denial of the Master Case was arbitrary and irrational.

82.    The 1996 Resolution in no way precludes the development of the Resort Plan, and the officially recorded instruments only preclude residential construction on the Golf Course.

83.    Indeed, by proposing to replace open space used for the Resort with new open space at a two-to-one ratio, the City's denial of the Master Case *reduced* the amount of open space available to the community.

84.    Plaintiffs have similarly addressed all of the other professed concerns with respect to fire safety, traffic, and the economic viability of the Resort and those purported concerns are left without any substantial basis in the record before the City.

85.    The City's denial of the Master Case is thus arbitrary and irrational and violates Plaintiffs' substantive due process rights under the U.S. Constitution.

86.    The arbitrary and irrational actions of the City have damaged Plaintiffs in the amount of $250 million.

# **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for the following relief:

1.    For damages in an amount to be proven at trial, but no less than $250 million;

2.    For attorney fees to the extent allowed by law; and

1    3.    For any other relief in favor of Plaintiffs that the Court deems just and

2    proper.

3

4    DATED:  October 22, 2021          GREENBERG GLUSKER FIELDS
                                       CLAMAN & MACHTINGER LLP
5

6                                 By: */s/ Garrett L. Hanken*
                                       GARRETT L. HANKEN
7                                      IRA M. STEINBERG
                                       Attorneys for Plaintiffs SAND
8                                      CANYON MANAGEMENT, LP,
                                       d.b.a. SAND CANYON COUNTRY
9                                      CLUB; and STEVEN KIM

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

# **DEMAND FOR JURY TRIAL**

Plaintiffs Sand Canyon Management, L.P., d.b.a., Sand Canyon Country Club ("SCCC"), and Steve Y. Kim ("Kim" and with SCCC, collectively "Plaintiffs") hereby demand a trial by jury in the above entitled action.

DATED:  October 22, 2021

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP


By: */s/ Garrett L. Hanken*
_____
GARRETT L. HANKEN
IRA M. STEINBERG
Attorneys for Plaintiffs SAND
CANYON MANAGEMENT, LP,
d.b.a. SAND CANYON COUNTRY
CLUB; and STEVEN KIM

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067